EDWARD D. EAGAN, APPELLANT, *v.* JAMES T. CLASBEY, RESPONDENT.

CONTRACT—CONSTRUCTION OF.—"Original cost" in contract was intended to mean actual cost, where E. agreed to deliver to C. mining stock to the value of five thousand dollars at its original cost, and advances or loans made to the corporation by E., which have been repaid to him by the corporation out of its own funds, cannot be regarded as a part of such cost, and E. is estopped from charging such loans to C. as a part of the cost.

APPEAL from a judgment of the district court of the third district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Sheeks & Rawlins,* for appellant.

*Messrs. Rosborough & Merritt,* for respondent.

HENDERSON, J.:

The complaint in this cause avers that on the eleventh day of September, 1885, the plaintiff was the owner of an undivided one-fourth of the property known as "Martin's Horn Silver Mine;" that the plaintiff and the other owners of said property, having in contemplation the formation

of a corporation under the laws of this territory, and passing the title to said property thereto, in payment for the stock subscribed, by the incorporators thereof, the plaintiff and defendant entered into the following contract:

"SALT LAKE CITY, Eleventh September, 1885.

"This agreement, entered into on this eleventh day of September, 1885, by and between Ed. D. Eagan, party of the first part, and James T. Clasbey, party of the second part, and both of Salt Lake City, Utah Territory. That said Ed. D. Eagan, party of the first part, does hereby agree to deliver to James T. Clasbey, party of the second part, stock in the mining claim, at present known as 'Martin's Horn Silver Mine,' and situated near Lava Beds, Idaho Territory, the amount of said stock to be of the value of five thousand dollars, at its original cost; and it is further agreed that, if said stock is not issued, the said Ed. D. Eagan, party of the first part, does agree to deliver to said James T. Clasbey, party of the second part, a deed for a portion of the aforesaid mining property, said deed to be equivalent to stock of the amount of five thousand dollars.                    E. D. EAGAN.
                                 J. T. CLASBEY."

That on the fifteenth day of September, 1885, pursuant to such intention, said corporation was formed upon the basis of $10,000,000 as the capital stock, divided into 100,000 shares of the face or par value of $100 each; that in forming such corporation it was agreed that said contract between plaintiff and defendant should be recognized, and that defendant should be permitted to subscribe for such amount of said stock as the $5,000 so paid by him would entitle him to under said agreement, and that such subscription should be in full execution of said contract between plaintiff and defendant; that the original cost of said stock was 62½ cents per share, being $62,500 in the aggregate for such entire stock; that plaintiff was entitled under said agreement to 17,000 shares of such stock, and the defendant to 8,000 shares thereof, being together one-fourth of the entire stock; and that it was

agreed between plaintiff and defendant that such was the cost and proper division of such stock.

The complaint further alleges that, in drawing up and reducing to writing the said articles of incorporation, the person who prepared the same, by inadvertence and mistake, in the subscription paragraph thereof, erroneously stated therein the number of shares to said plaintiff as 15,000, and to defendant 10,000 shares; that plaintiff, upon hearing said articles read, and before executing, noticed said error, and called the attention of defendant thereto, and that, to save delay in redrafting said articles, it was agreed between plaintiff and defendant that they would execute said articles as drafted, and receive each the number of shares as therein stated, but that such mistake should be rectified after such stock was issued, by defendants assigning and transferring to plaintiff 2,000 shares of such stock; that said articles were executed, and said stock issued, as set forth therein; that thereafter said defendant transferred to said plaintiff 525 shares of such stock, but refuses to transfer the balance thereof, but has converted to his own use 1,475 shares of such stock, of the value of $3 per share, and demands judgment for the sum of $4,425 against defendant.

The answer and counter-claim of the defendant denies the making of any agreement or understanding between plaintiff and defendant, except the written contract set forth in the complaint, or that the original cost of said stock was $62\frac{1}{2}$ cents per share, or that there was any error in drafting said articles of incorporation, or that there was any agreement or understanding to reconvey any portion of said stock, and denies that said plaintiff under said agreement was entitled to 17,000 shares of said stock, and said defendant only 8,000 shares thereof; but, on the contrary, avers that the original cost of said stock was only 50 cents per share, being $50,000 for the whole thereof; that at the time of making said contract said plaintiff held an executory contract for the purchase of one-fourth of said property, but that, being without the means sufficient to make the payments required thereunder, he applied to the defendant to contribute $50,000 to the

purchase thereof, with the understanding that defendant should share in such purchase in such proportion as the $5,000 should bear to the cost of such purchase, and thereupon he paid plaintiff the $5,000, and said contract was executed; that thereupon the plaintiff perfected such purchase, and at once thereafter said incorporation was formed, but that defendant did not then know the actual cost of such purchase, and did not then know what the proper ratio of division of said one-fourth of said stock, as between him and plaintiff, should be, but that said articles were executed with the understanding that the amount of subscription by plaintiff and defendant was only approximately correct, as between them, and that the proper distribution and adjustment thereof was left to future adjustment under their contract; that afterwards, and before any such adjustment, and before the defendant was aware of the cost of said stock, plaintiff requested defendant to assign to him 525 shares of such stock to enable plaintiff to fulfill a contract of sale he had made, and that defendant assigned such stock to plaintiff; that under said contract defendant was entitled to have 10,000 shares of said stock, and plaintiff 15,000 shares thereof; that, after learning such fact, the defendant demanded of plaintiff 525 shares of said stock, which plaintiff refused, and claimed that the original cost was $62\frac{1}{2}$ cents per share, and that plaintiff included in such original costs certain amounts, which were loaned by said plaintiff to said corporation, and which said corporation had repaid to him out of its net profits; that such claim was unjust and fraudulent; that the defendant, under said contract, is entitled to 525 shares of said stock from the plaintiff, which plaintiff has converted to his own use; avers that said stock is worth three dollars per share, and demands judgment against the plaintiff for the sum of $1,575.

The cause was tried before the court without a jury, and the following findings of fact, and conclusions of law thereon, were found by the trial judge:

"(1) The plaintiff and defendant, on the eleventh day of September, 1885, entered into the written contract exhibited in the complaint, whereby plaintiff, in considera-

tion of the sum of $5,000, then delivered to him by the defendant towards the purchase of one-fourth undivided of the Martin's Horn silver mine, at Era, Idaho, agreed to deliver to the defendant stock in such mining claim in amount equal to $5,000, at its original cost; and, further, that, if such stock was not issued, he would deliver to defendant a deed to be equivalent to stock of the amount of $5,000.

"(2) Plaintiff and others bought an option on said mine, paying therefor $6,000, from one Chambers (such price including $5,000 paid by Chambers to Martin, the owner of the mine, on said option, and $1,000 expenses incurred by Chambers), and on the twelfth of September, 1885, paid to Martin $50,000, the balance of the purchase money.

"(3) On the fifteenth of September, 1885, a corporation was organized by the purchasers, and others associated with them, to work said mine, called the Bannock Gold & Silver Mining Company of Idaho, on a basis of 100,000 shares of capital stock, one-fourth of which (25,000 shares) were to be allotted to plaintiff and defendant, to be divided between them according to their said contract.

"(4) Plaintiff contributed one-fourth of the $6,000 paid to Chambers, and one-fourth of the $50,000 paid to Martin, using with his own money the said $5,000 delivered to him by defendant.

"(5) On the organization of the corporation, the mine was conveyed to it, the plaintiff and four other corporators voluntarily loaned and advanced to the corporation $2,000, of which sum the plaintiff contributed $500.

"(6) Soon after the organization of the corporation, by consent and on motion of the plaintiff, the corporation assumed and paid a debt of $5,000 to one McMasters, which had been incurred by plaintiff and one Thum, the original holders of said option; and afterwards the corporation paid a claim for labor on the mine pending the option, which claim was estimated at $1,500, but the amount actually paid thereon to Martin was $2,127, paid by the corporation through plaintiff, its superintendent. The corporation, in November, 1885, out of its net earnings, refunded to the contributors the $6,000 paid to Chambers,

and the $2,000 advanced as aforesaid, of which the plaintiff received $2,000, the portion advanced by him.   The advances and loan thus repaid, and debts assumed and paid by the corporation, amount to $14,127, leaving the sum of $50,000 as the actual outlay by plaintiff and the other purchasers of the mine.

"(7) Of the $50,000 so paid by the purchasers the plaintiff paid one-fourth, or $12,500 (using for that purpose the $5,000 delivered to him by defendent).

"(8) The actual original cost of the 25,000 shares of stock was 50 cents per share.

"(9) When the corporation was about to be organized the plaintiff claimed that the cost of stock was $62\frac{1}{2}$ cents per share, and that he was entitled to subscribe for and hold 17,000 shares, and the defendant only 8,000 shares, but there was no agreement or settlement between defendant and plaintiff as to the claim, and the matter was left for future adjustment by plaintiff and defendant.

"(10) About the month of December, 1885, defendant, at request of plaintiff, delivered to plaintiff 500 shares of stock, to enable the latter to fill a sale, and 25 shares which plaintiff desired to give to another person.   This stock was delivered to plaintiff subject to the adjustment of their stock account.

"(11) The parties never agreed upon the cost of the stock.   Plaintiff demanded 1,475 shares of stock from defendant, but defendant refused to comply, and plaintiff brought this action.   After this, and before answering, defendant demanded of plaintiff the return of the 525 shares delivered as aforesaid, which was refused by plaintiff.

"(12) The value of said stock, when the action was brought, and when defendant made his said demand, was and is now three dollars per share."

As conclusions of law the court finds:

"(1) That the plaintiff was entitled to subscribe for and hold 15,000 shares of said stock, and defendant was entitled to subscribe for and hold 10,000 shares.

"(2) That plaintiff is not entitled to recover in this action, but the defendant is entitled to judgment against the plaintiff.

"(3) That on his counter-claim the defendant is entitled to recover from the plaintiff the value of 525 shares of said stock, viz., $1,575, together with his costs to be taxed."

Judgment was rendered accordingly, and, after motion for new trial, the plaintiff appealed to this court from the judgment and order denying the motion for new trial.

The only question raised in this court by the appellant is that the pleadings and findings of fact do not warrant the judgment, but that, upon the facts found, the judgment in favor of defendant should be set aside, and judgment rendered for the plaintiff thereon for the amount of his claim. We think that the findings do not warrant the claim of the plaintiff, but that they are conclusive against him. We think it sufficient to recall the fact that the findings expressly determine, as matter of fact, that the cost of said property to plaintiff and the other purchasers was $50,000, and "that the original cost of the 25,000 shares of stock was fifty cents per share," and that there was never any agreement between the parties as to the cost or distribution of said shares between them, but that it was left to the future adjustment of their stock account under the contract. It is contended by the plaintiff that the term "original cost" in the contract should be construed to mean its entire cost to plaintiff, and that the findings show that its cost was more than 50 cents per share. The findings of fact go upon the idea that the advances by plaintiff over 50 cents per share were not a part of the cost, but that they were loans made by plaintiff to the corporation, and that the plaintiff so treated it himself. If it was not a loan, then it was a gross fraud upon defendant and other holders of stock to have it refunded to him as such. We have no doubt that the term "original cost," as used in said contract, was intended by the parties to mean its cost to the plaintiff; but advances or loans made to the corporation which the plaintiff has treated, and had refunded to him by the corporation out of its property as such, cannot be regarded as a part of such cost. The plaintiff cannot use it for the double purpose of depleting the treasury and divisible assets of the association, and at the same time use it

as a charge to the holders of stock as a part of its cost. We think it was proper for the court to leave him where he had placed himself in the transaction, and estop him from charging such loans to defendant as a part of the cost of the stock. The judgment and order appealed from should be affirmed, with costs to defendant.

ZANE, C. J., and BOREMAN, J., concurred.