FINN *v.* CULBERHOUSE.

Opinion delivered October 28, 1912.

1. SALES OF CHATTELS—CONSTRUCTION.—Where a stock of old goods were sold "at the wholesale cost of same," to be determined by an inventory, the term "wholesale cost" is to some extent ambiguous, and should be construed, in view of a local custom to that effect, to mean the original cost of purchasing the goods in the wholesale market and of laying them down in the vendor's store. (Page 200.)

2. SAME—ACCEPTANCE.—Where plaintiff exchanged land for a stock of merchandise under an agreement to the effect that the price of the stock should be its "wholesale cost," including freight and dray charges, and accepted an inventory of the goods which included an estimate of the amount of freight and dray charges, and received the goods and sold a part of them, he can not afterwards complain that the cost of freight and drayage was less than the estimate. (Page 201.)

Appeal from Craighead Chancery Court, Western District; *Charles D. Frierson,* Chancellor; affirmed.

*Basil Baker,* for appellant.

1. "Wholesale cost" does not mean the wholesale price with 10 per cent. added, but the invoice price at wholesale. 45 Am. St. 230.

2. There was fraud and deceit shown, or at least concealment. 16 L. R. A. (N. S.) 818; 17 *Id.* 284; 128 U. S.

(32 L. Ed.) 383, 439; 90 U. S. 420; 143 *Id.* 79; 135 *Id.* 582, 33 (L. Ed.) 384; 74 Ark. 46; 77 *Id.* 261; 81 *Id.* 234.

3. There was no mutual mistake. 91 Ark. 162; 94 *Id.* 200; 90 *Id.* 24; 89 *Id.* 309; 98 *Id.* 23; 141 S. W. 941.

*Hawthorne & Hawthorne,* for appellee.

1. "Wholesale cost" includes cost of transportation, and 10 per cent. added is customary and reasonable. No fraud nor deceit was proved, and the court properly reformed the contract to express the true intent of the parties. 73 Ark. 542; 11 *Id.* 58; 38 *Id.* 339; 60 *Id.* 387; 74 *Id.* 46; 46 *Id.* 250; 130 U. S. 643; 125 *Id.* 247.

2. Wholesale price has a fixed and determined meaning. 45 Am. St. 230. The custom of all merchants in that vicinity to add 10 per cent. was properly shown. 45 S. W. 876.

McCULLOCH, C. J. Appellants owned a tract of land, containing 591 acres, situated in Craighead County, and appellee was engaged in the mercantile business in the city of Jonesboro, being the owner of a stock of general merchandise. Negotiations were begun between the parties looking to a sale by appellants of their land to appellee, and a purchase by them from appellee of the latter's stock of merchandise. The negotiations finally resulted in a bargain whereby appellee became the purchaser of the land at the sum of $25 per acre, and appellants purchased the stock of merchandise, the price thereof to be credited on the purchase price of the land. A written memorandum of the contract was made and signed by the parties, in which it was agreed that "the price of the above stock to be the wholesale cost of the same." The parties proceeded jointly to take an inventory of the stock of goods, and it amounted to the sum of $10,233, which was credited on the purchase price of the land, and appellee paid the balance, receiving a conveyance. Appellant took possession of the stock of goods, and put on a special sale, and thereby disposed of a considerable quantity of it. The inventory of the stock was taken according to the marks on the articles, which the evidence shows was at the original price paid and 10 per cent. added for the estimated expense of freight charges, drayage, etc. Appellee had been in business at Jonesboro for about thirty years, and the stock of goods contained accumulations

of several years. Appellants assert that they did not know, when the inventory was taken, that the marked prices on the goods included anything above the actual prices paid in the wholesale market, and that they did not make discovery of that fact until several months after the stock of goods had been delivered to them. They instituted this action at law against appellee, alleging that the latter had, by fraud, deceit and misrepresentation, induced them to accept the stock of goods under the belief that they were getting the same at original first cost without other charges, and they prayed for the recovery of damages in the sum of $930.27, which was the amount of the added 10 per cent. Appellee answered, alleging that the contract actually entered into by the parties was that the goods should be taken at marked cost, and that one of appellants reduced the contract to writing and changed the wording so as not to correctly represent the real agreement. He denied the allegations as to fraud, deceit and misrepresentation, and alleged that the inventory had been taken according to the contract and with full knowledge on the part of appellants of the fact that it was taken according to the marked cost on the goods, including estimated freight charges, etc. Appellee made his answer a cross complaint, and prayed for the reformation of the contract, and on his motion, without objection on the part of appellants, the cause was transferred to the chancery court, where it proceeded to a final hearing, resulting in a decree in appellee's favor.

A considerable amount of testimony was taken, mostly of merchants of the city of Jonesboro, and it appears, by the preponderance of the testimony, to be customary in that city for merchants, in marking the cost price upon their goods, to add a percentage sufficient to cover the estimated expense of transportation and placing upon the shelves ready for sale. The testimony also warrants a finding that upon the class of goods held in stock by appellee 10 per cent. was approximately a correct estimate of such charges. The chancellor found that the contract did not correctly express the real intention of the parties, and that it should be reformed so as to make the marked cost on the packages the basis of the sale. He also found that there was no misrepresentation or bad faith on the part of appellee.

Let it be said in the outset that there is no testimony in the record tending to show any actual bad faith on the part of appellee. The utmost that appellants claim is that the contract, when interpreted according to the language used, meant the original price paid by appellee without any other charges added; that the inventory was taken without any knowledge on their part of the added percentage to cover charges of transportation, etc., and that appellee's conduct in failing to disclose to them that 10 per cent. had been added for such charges amounted in law to fraudulent concealment.

Before proceeding to determine whether the chancellor was right in decreeing a reformation of the contract, it is first necessary that we decide what interpretation should be placed upon that part of the contract which fixes the price at which the goods were to be taken.

The term "wholesale cost" is not free from obscurity, and is to some extent ambiguous, making it necessary to look to the surrounding circumstances to determine what it really means as used by the parties in this contract. It has generally been said, in the adjudged cases, that such terms as "actual cost," "estimated cost," "first cost," "original cost," "prime cost," and "wholesale cost," are indefinite, and that surrounding circumstances must often be looked to in order to arrive at a proper interpretation. *Goodwin* v. *U. S.*, 10 Fed. Cases 625; *Hazleton Tripod Boiler Co.* v. *Citizens Street Ry. Co.*, 72 Fed. 317; *Herst* v. *DeComeau*, 31 N. Y. Superior Court, 590; *McCoy* v. *Hastings*, 92 Iowa 585; *Holloway* v. *Frick*, 149 Pa. St. 178; *Eagan* v. *Clasbey*, 5 Utah 154; *Boaz* v. *Owens*, (Ky.) 45 S. W. 876.

There is a difference between the terms "wholesale price" and "wholesale cost," though they are often used interchangeably, as was done by many of the witnesses in this case. If the former had been made use of in the present case, it would doubtless be construed to mean the present price of the goods in the wholesale market; in other words, the present market value. It is evident, however, that the term "wholesale cost" was not used in that sense, for the subject of the sale was an old stock of goods, and the conduct of the parties in taking an inventory plainly shows that the prices paid by appellee were to be considered, and not present prices or market value.

Now, when it is seen that the parties meant to fix a basis of sale according to the prices which had been paid by appellee, it is evident, when we construe this language in the light of the surrounding circumstances and the almost universal custom which prevailed in the city of Jonesboro, that the term was used in a sense which includes the transportation charges and means the wholesale cost of the goods in appellee's house in the city of Jonesboro. It does not mean the selling price in the wholesale markets, nor the selling price at wholesale in Jonesboro; but it means the original cost of purchasing the goods in the wholesale market and of laying them down in the business house at Jonesboro. We are of the opinion, therefore, that the contract should have been construed to mean that, and that it needed no reformation to conform to the actual intention of the parties. Now, the proof shows, as before stated, that 10 per cent. was an approximately correct estimate of the cost of bringing the goods from the wholesale market and placing them upon the shelves ready for sale, that is to say, a correct estimate of the freight and dray charges. That is only an estimate, and the testimony is not conclusive that it is a correct one; but appellants were present when the inventory was taken and assisted in making it. They are chargeable with knowledge of what the language of the contract really means, even though they may, in good faith, have misconceived its meaning; and if they desired an ascertainment of the actual amount of the freight and drayage charges to be added to the original price, they should have demanded it at the time. Having accepted the inventory and the delivery of the goods and disposed of a considerable portion of them, it is too late now to complain of any discrepancy that might appear between the actual expense of transportation and the estimate marked on the goods. The views of the chancellor led to a correct decree, and the same is therefore affirmed.